UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONI RENEE DANGERFIELD,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZAI, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:22-cv-01529-EFB (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. ECF No. 1. The parties' cross-motions for summary judgment are pending. ECF Nos. 9 & 11. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).  ECF No. 8. For the reasons provided below, plaintiff's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

**I.    Background**

On April 11, 2016, plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), alleging disability beginning September 30, 2015.[1]

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to

1

Administrative Record (AR) 27.  Plaintiff alleged she was disabled due depression and anxiety.  AR 79.  Plaintiff's application was denied initially and upon reconsideration.  AR 96-100.  Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated August 30, 2021.  AR 13-31.  Plaintiff appealed the decision to the U. S. District Court for the Northern District of California, and, on January 31, 2020, the parties stipulated to remand the case for further proceedings.  AR 500-510.

A different ALJ held a second hearing on May 4, 2022, where plaintiff was represented by counsel.  AR 460-494.  Medical expert Dr. John Kwok and vocational expert (VE) Ronald Hatakeyama also testified.  AR 436.  Plaintiff testified that she worked as a bus driver for twenty-five years.  AR 472; *see* AR 449 (in 2018 and 2022 hearing testimony, plaintiff reported working full-time as a bus driver from 1985 to 2010).  She testified that, for the past ten years, she had

---

disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits. *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

suffered from anxiety and depression. AR 479. Her medication for these conditions was "sometimes" helpful. AR 480. Plaintiff testified that she would be unable to drive a bus at present because transfers, bus passes, and different routes would be too mentally challenging, and because of problems with her left shoulder and left leg. AR 484-484. She testified that she did not have trouble standing and could lift up to twenty pounds on a regular basis. AR 486. She testified that sometimes she had trouble sleeping, though she had medication that helped her sleep. AR 486-487.

Dr. Kwok testified that, based on the records he reviewed, he was "not able to establish any severe musculoskeletal impairment . . . as defined by Social Security for this claimant" during the five-year period of alleged disability. AR 464-465. He was also unable to identify any non-severe "medical determinable impairments . . . of the musculoskeletal nature." AR 465. Dr. Kwok testified that the record he reviewed did not include objective evidence, such as an MRI report or x-ray report, that would allow him to "objectively corroborate" the medical notes, which included plaintiff's subjective statements. AR 468-470.

Mr. Hatakeyama, the VE, testified that someone with plaintiff's assessed residual functional capacity (RFC) could perform the requirements of medium-exertion jobs such as hand packager, kitchen helper, and laundry laborer. AR 490-491. The VE testified that these jobs involved simple instructions and would allow for one absence per month. AR 491. The VE further testified that, if plaintiff were limited to lifting 20 pounds occasionally and 10 pounds frequently, could stand or walk for six hours of an eight-hour day, had no limits on sitting, could not work at heights, and could occasionally stoop, kneel, and crouch, she would be "looking at a range of light work." AR 492.

The ALJ determined that plaintiff had not been under a disability during the period at issue (September 30, 2015 to December 31, 2020), finding as follows:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 30, 2015 through her date last insured of December 31, 2020.

3. The claimant has the following severe impairments: major depressive disorder and generalized anxiety disorder.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is capable of understanding, remembering, and carrying out simple instructions. The claimant is limited to occasional workplace changes [and] public contact. The claimant is limited to frequent coworker and supervisor contact. The claimant may be absent one day per month and off task no more than 5% of an eight-hour workday.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born [in 1956] and was 64 years old, which is defined as an individual of advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of 'not disabled,' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 30, 2015, the alleged onset date, through December 31, 2020, the date last insured.

AR 439-451.

**II.    Standard of Review**

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

/////

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**III.   Claims**

Plaintiff claims that the ALJ made the following errors: (1) the ALJ erred in determining that her musculoskeletal impairments were non-severe; and (2) the ALJ erred by failing to consider these impairments beyond Step Two in formulating the RFC.

**IV.   Analysis**

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to properly consider her physical limitations, including a left elbow tear and left elbow fracture.

The ALJ found plaintiff to have several non-severe physical impairments, including a left shoulder impairment and an elbow fracture sustained in a 2018 fall. AR 440-442. As to the former, the ALJ noted that, in 2017, plaintiff sought treatment for left shoulder symptoms, including limited range of motion. AR 440. Her left shoulder pain worsened after she lifted heavy boxes. *Id.* Plaintiff was referred to physical therapy, and later examinations "did not document significant clinical signs pertaining to her left shoulder." AR 441 (record citations omitted). The ALJ found plaintiff's left shoulder impairment non-severe "[b]ased on the claimant's lack of significant shoulder symptoms or clinical signs lasting at least 12 continuous months[.]" *Id.*

5

Similarly, plaintiff's summary of the medical evidence notes that plaintiff first complained of left shoulder pain in June 2017. AR 258-268, 327. In September 2017, she saw an orthopedic provider for left shoulder pain and limited range of motion, and was diagnosed with adhesive capsulitis and/or a rotator cuff tear. AR 315-317. In October 2017, plaintiff was advised to "avoid heavy lifting" so as not to exacerbate her left shoulder pain. AR 313. Plaintiff does not cite any subsequent medical records that refer to left shoulder pain or limitation.

At Step Two, the ALJ further noted that, in February 2018, plaintiff fractured her left elbow in a fall. AR 441. As with the left shoulder impairment, the ALJ found this impairment non-severe due to the lack of significant symptoms lasting at last 12 continuous months. *Id.* Plaintiff cites evidence that she slipped and fell on concrete in February 2018 and was fitted with a wrist brace. AR 303. The following month, she reported tingling in her left arm and was diagnosed with a fracture in her left elbow. AR 289-290, 407. In late March 2018, she was advised to wear a left arm sling and "avoid lifting" in order to encourage healing. AR 277. Plaintiff cites no evidence of elbow problems after March 2018.

Also at Step Two, the ALJ considered plaintiff's 2017 treatment for arthritis in her hands, which was treated with over-the-counter medication. AR 441. The ALJ cited treatment notes indicating that plaintiff's arthritis "was effectively managed with anti-inflammatory medications" and further noted that "[t]he longitudinal record indicates that the claimant's musculoskeletal examinations were unremarkable." *Id.* (citations omitted). The ALJ found plaintiff's arthritis non-severe due to the lack of significant symptoms lasting at last 12 continuous months. *Id.* Similarly, the ALJ found plaintiff's March 2018 fifth left toe fracture, sustained in a fall, to be a temporary impairment that lasted less than 12 continuous months. *Id.* Plaintiff cites no evidence suggesting that either her arthritis or toe fracture impaired her for a continuous 12-month period.

The ALJ summed up her assessment of plaintiff's physical impairments as follows:

> Her acute injuries, including fractures to her left elbow and left fifth toe, resolved within 12 months. While imaging of the claimant's left shoulder documented some findings and clinical examinations of the claimant's hands revealed some restricted range of motion and arthritic deformities of the interphalangeal joints, the longitudinal record did not document significant musculoskeletal clinical signs or symptoms.

6

AR 442 (giving little weight to reviewing and examining doctors' opinions that plaintiff had physical work-related limitations).

An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28.

As the Ninth Circuit explained in *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017), "Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (Internal quotes and citations omitted.) When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Here, plaintiff cites the Appeals Council's remand order, which states in part:

> In February 2017, the [ALJ] noted the claimant was treated for osteoarthritis of the hands, with an anti-inflammatory drug. She had positive physical findings in September 2017 with the left shoulder, including restrictive range of motion, 4/5 flexion and positive Neer and Hawkins tests. An MRI of right shoulder noted advanced cartilage loss of the glenohumeral joint. The record also suggests the claimant suffered a fall and further injured her left arm in February 2018.

AR 539-540. Plaintiff argues that, "given that the Appeals Council specifically outlined a 12-month period — February 2017 to February 2018 — where Plaintiff's left upper extremity impairments were well-documented via objective imagery and in-person testing, ALJ Surh's finding on remand that such impairments were no longer severe is not supported by substantial evidence." ECF No. 9 at 14. This argument is unavailing, as nothing in the AC's order required the ALJ to make specific findings with respect to the listed evidence. Rather, the ALJ was free to reweigh the medical evidence and reach whatever conclusion was supported by substantial evidence on the issue of physical impairment. *See* 20 C.F.R. § 404.977(b) (ALJ shall take any action ordered by Appeals Council and may take additional action that is not inconsistent with the remand order).

Plaintiff's argument that the ALJ did not consider her physical impairments in formulating the RFC is also unpersuasive. The ALJ stated that, in making the RFC finding, she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." AR 444. She heard medical expert testimony on plaintiff's physical impairments and found, contrary to Dr. Kwok's opinion, that plaintiff "has a medically determinable musculoskeletal impairment [in her left shoulder], albeit non-severe." AR 442. The ALJ discussed the opinions of two agency consultants concerning plaintiff's physical limitations. *Id*. She considered plaintiff's ability to prepare meals and do household chores. AR 446. The ALJ also considered plaintiff's part-time work as a home health aide, a job "generally performed at the medium exertional level," on and off from 2004 to 2015. AR 449 (citing 2018 hearing testimony).

Based on the foregoing, the court concludes that plaintiff's assessed RFC was adequately assessed, explained and grounded in substantial evidence.

/////

/////

/////

/////

/////

**V.     Order**

For the foregoing reasons, plaintiff's motion for summary judgment (ECF No. 9 ) is DENIED, defendant's cross-motion for summary judgment (ECF No. 11) is GRANTED, and the Clerk is directed to enter judgment in defendant's favor and close the case.

DATED: September 1, 2023.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE